[Cite as *Gerken v. Barber*, 2019-Ohio-641.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| JEFF and DONNA GERKEN | : | |
| | : | |
| Plaintiffs-Appellants | : | Appellate Case No. 2018-CA-65 |
| | : | |
| v. | : | Trial Court Case No. 17-JUV-321 |
| | : | |
| KEVIN BARBER, et al. | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations Division) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of February, 2019.

. . . . . . . . . . .

JAMIE ANDERSON, Atty. Reg. No. 0081218, 2190 Gateway Drive, Fairborn, Ohio 45324
        Attorney for Plaintiffs-Appellants

KEVIN BARBER and JENNIFER STACY, 200 Brubaker Drive, Apt. 6, New Carlisle, Ohio
45344
        Defendants-Appellees, Pro Se

. . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** This matter is before the Court on the May 22, 2018 Notice of Appeal of Jeff and Donna Gerken. The Gerkens appeal from an April 23, 2018 judgment entry of the Clark County Court of Common Pleas, Domestic Relations Division, which adopted a magistrate's decision denying the Gerkens' request for companionship rights with their granddaughter, K.B. K.B.'s parents are Kevin Barber and his girlfriend Jennifer Stacy, who live together; Kevin Barber is Donna Gerken's son and Jeff Gerken's step-son.

**{¶ 2}** The Gerkens filed a complaint for companionship rights and companionship time with K.B. on November 1, 2017. The Gerkens' complaint asserted that they had "a close, bonded relationship" with K.B, and that Baker and Stacy did "not engage in communication with [them] to support their relationship with the child." The Gerkens' expressed fear that, unless an order establishing companionship time was issued, they would "be alienated from the child's life," and that it would be "in the best interest of the child that she be allowed regular visitation and contact with them to maintain the positive, strong relationship between them."

**{¶ 3}** The magistrate held a hearing on the complaint on April 13, 2018, at which the Gerkens were represented by counsel; Barber and Stacy appeared pro se. At the hearing, the Gerkens testified regarding the nature of their relationships with K.B., Barber and Stacy. After the Gerkens had testified, when their attorney indicated that she intended to call Mr. Gerken's sister, as well as Barber and Stacy, as additional witnesses, the following exchange occurred:

> THE COURT: * * * I - - I'm going to, I think I'm going to stop everything here and I'm going to, I'm going to put something on the record so we can have a record and then I'm going to talk to all of you. I'm assuming

because we're here and I know the Guardian talked to you a little bit about some proposal, Mr. Barber and Ms. Stacy, and you wanted, everyone wanted to proceed to a hearing, which is fine.   That's what I get paid to do. But, I'm assuming because we're here, you're absolutely against any kind of visitation with [the child] and Jeff and Donna Gerken; is that correct?

MS. STACY: Yes.

THE COURT: And you don't want any kind of contact at all?

MR. BARBER:   No.

THE COURT: No presents, no nothing.   And the two of you are living together?

MR. BARBER:   Yes.

MS. STACY:   Yes.

THE COURT:   * * * So, I, given all that and I had talked with [the Gerkens' attorney] before I brought you in but I do have to at least give the opportunity, I think, to have the hearing begin and listen to what happened but I pretty much have heard what has had to be said for me to make a decision, okay?

The magistrate further explained that she was required to "give a fair amount of deference to" the parent's wishes, that she "most likely" would not be able to give the Gerkens what they wanted, and that she wanted them to know that because "once we start going down that path and the mud starts being slung there is really no way of turning back."   No additional witnesses were called.

{¶ 4} On April 23, 2018, the magistrate issued a decision denying the Gerkens'

request for companionship time with K.B., It provided in part:

3. The Defendants, Kevin Barber and Jennifer Stacy, are the unmarried parents of [K.B.], born [in 2014]. The parents and [K.B.] reside together in New Carlisle, Ohio.

4. Donna Gerken is the paternal grandmother and Jeff Gerken is the paternal step grandfather of [K.B.]. The Gerkens had resided in the Clark County area until [K.B.] was three months old. The Gerkens have had only sporadic contact with [K.B.] via Facetime as they now reside in the State of Florida. The Gerkens have had no contact with [K.B.] since August, 2017. The Gerkens request that this Court grant them visitation with [K.B.] during the summer and at times that they may be in the Clark County area. The parents oppose this request.

\* \* \*

6. R.C. 3109.12 sets forth "parenting time, companionship or visitation rights where mother is unmarried." The statute specifically provides, in pertinent part:

"(A) If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code or has been determined in an action under Chapter 3111 of the Revised Code to be the father of the child, \* \* \* the parents of the father and any relative of the father may file a complaint

requesting that the court grant them reasonable companionship or visitation rights with the child.

"(B) The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the parenting time rights of companionship or visitation rights is in the best interest of the child. In determining whether to grant reasonable parenting time rights or reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable parenting time rights or reasonable companionship or visitation rights under this section and to any order granting such rights that is issued under this section."

7. There has been insufficient contact between the Gerkens and [K.B.] for [K.B.] to have developed a strong bond and relationship with the Gerkens.

8. As for the state of the relationship between the Gerkens and the parents, this trier of fact observed that they have been less than amicable in the past and that grandparent visitation could further estrange them.

9. The geographical location of the parties would not foster

visitation as they live in separate states with a long distance from one another.

10.   In *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, the Supreme Court of Ohio, certifying a conflict between the Ninth and Seventh Appellate Districts, addressed the issue of " '[w]hether Ohio Courts are obligated to afford "special weight" to the wishes of the parents of minor children concerning non-parental visitation as outlined in *Troxel v. Granville* (2000), 530 U.S. 57.' " Id. at ¶ 7.   The court answered that question in the affirmative.   While the trial court is required to consider the wishes of the parents regarding the requested visitation, the *Harrold* court noted that "nothing in *Troxel* suggests that a parent's wishes should be placed before a child's best interest."   Id. at ¶ 44.

11.   The parents['] opposition to the visitation and the parents' wishes have been afforded special weight.

12.   The GAL appointed in this matter recommended that there be no court ordered visitation as it would not be in the child's best interests.

13.   The burden of proof is upon the Gerkens to show grandparent visitation is in [K.B.'s] best interests.

14.   It is concluded after careful consideration of the evidence presented pro and con that this trier of fact has expressly weighed the parent[s'] wishes and concerns about visitation between the Gerkens and [K.B.] as a significant factor in reaching this decision, thus protecting the parent[s'] due-process rights.   In deference to the parent[s'] wishes and

concerns regarding visitation, the considerable distance between the child's residence and the Gerkens, the fact that the parents have maintained an intact home, the fact that the contact between the Gerkens and [K.B.] has been minimal and due to the Gerkens['] move from Ohio, the Court concludes that it is not in [K.B.'s] best interests to order visitation between [K.B.] and the Gerkens.

{¶ 5} The day the magistrate's decision was filed, the trial court filed a "Judgment Entry Final Appealable Order" stating:

The Magistrate's Findings and Orders attached herewith are adopted and ratified by this Court in their entirety and therefore made a final Order of this Court.

This is a Final Appealable Order.

A party shall not assign as error on appeal the Court's adoption of any findings of fact or conclusions of law in that decision unless the party timely and specifically objects to that finding or conclusion as required by Ohio Civil Rule 53(E)(3).

We note that Civ.R. 53 does not contain an "(E)" section, but Civ.R. 53(D)(3)(a)(iii) contains the proscription referenced in the judgment.

{¶ 6} The Gerkens did not file objections to the magistrate's decision. They now appeal from the trial court's judgment.

{¶ 7} We note that herein, the Gerkens failed to follow App.R. 16, which governs appellate briefs, in that their brief does not contain a table of contents, a table of authorities, assignments of error, or a statement of issues presented for review.

{¶ 8} The Gerkens argue that, at the hearing before the magistrate, they "had multiple witnesses to call, as well as the Defendant parents as if on cross examination," and that the Magistrate did not allow them "to be fully heard on the matter, nor to present the remainder of their witnesses." They further assert that the trial court "ambiguously listed this action as a FINAL APPEALABLE ORDER, while incorrectly misstating the required conspicuous language required under Ohio Civil Rule 53(D)(2)(iii) [sic]." According to the Gerkens, "the use of the verbiage 'FINAL APPEALABLE ORDER' was not only confusing, but it misled the Appellants [to] believe that the Entry was, in fact, a final appealable order, not a Magistrate's Decision to which the Appellants could simply object."

{¶ 9} The Gerkens conclude that, based on "the error in citing the correct language pursuant to Ohio Civil Rule 53(D)(2)(iii) [sic] and the misleading reference to a Final Appealable Order," and the fact that they "were not afforded the opportunity to present their entire case by providing testimony and utilizing witnesses," this court should reverse the trial court's judgment and remand "to the trial court, to allow Appellants the opportunity to present testimony, witnesses and other evidence to prove their case."

{¶ 10} Barber and Stacy did not file a responsive brief.

{¶ 11} Civ.R. 53(D)(3)(a)(iii) provides:

A magistrate's decision shall be in writing, identified as a magistrate's decision in the caption, signed by the magistrate, filed with the clerk, and served by the clerk on all parties or their attorneys no later than three days after the decision is filed. *A magistrate's decision shall indicate conspicuously that a party shall not assign as error on appeal the court's*

*adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless that party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).*

(Emphasis added.)

{¶ 12} Civ.R. 53(D)(3)(b)(i) provides: "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 523(D)(4)(e)(i). * * *."

{¶ 13} Civ.R. 53(D)(4)(e)(i) provides:

The court may enter a judgment either during the fourteen days permitted by Civ.R. 53(D)(3)(b)(i) for the filing of objections to a magistrate's decision or after the fourteen days have expired. If the court enters a judgment during the fourteen days permitted by Civ.R. 53(D)(3)(b)(i) for the filing of objections, the timely filing of objections to the magistrate's decision shall operate as an automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered.

{¶ 14} Civ.R. 53(D)(3)(b)(iv) provides:

* * * Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as finding of fact or conclusion of law under Civ.R. 53(A)(3)(a)(ii), unless that party has objected to that finding or

conclusion as required by Civ.R. 53(D)(3)(b).

{¶ 15} The magistrate's decision herein failed to comply with Civ.R. 53(D)(3)(a)(iii). This Court thoroughly considered a magistrate's failure to comply with the analogous provision in Crim.R. 19(D)(3)(a)(iii) in *State v. Wheeler*, 2016-Ohio-2964, 65 N.E.3d 182 (2d Dist.). This Court noted as follows:

> "[T]he main purpose for the procedures set forth in [Crim.R. 19] is to afford [parties] with a meaningful opportunity to file objections to a magistrate's decision." *Skydive Columbus Ohio, L.L.C. v. Litter*, 10th Dist. Franklin No. 09AP-563, 2010-Ohio-3325, ¶ 6, citing *Pinkerson v. Pinkerson*, 7 Ohio App.3d 319, 455 N.E.2d 693 (1st Dist. 1982), syllabus. "The rationale is that when a magistrate fails to comply with [Crim.R. 19](D)(3)(a)(iii) * * * the parties may be unaware of the strict waiver rule prescribed by [CrimR. 19](D)(3)(b)(iv) * * * and the related time-limited procedures for preserving objections to a magistrate's decision." (Citation omitted.) *In re A.W.C.*, 4th Dist. Washington No. 09CA31, 2010-Ohio-3625, ¶ 18. "The 'conspicuous' notice serves to warn the parties of the consequences of failing to file objections[.]" (Citations omitted.) *Walters v. Lewis*, 7th Dist. Mahoning No. 15 MA 0135, 2016-Ohio-1064, ¶ 18.
>
> The Ninth District Court of Appeals has consistently held that the failure to comply with the requirements of Crim.R. 19(D)(3)(a)(iii) and its analogous provisions amounts to reversible error that requires the matter to be remanded to the trial court so that the magistrate can prepare and file a decision that comports with the requirements of the rule and so that the

parties may have the opportunity to file objections. * * *

In contrast, the Fourth, Fifth, Eleventh, and Twelfth Districts have held that if a magistrate's decision failed to comply with the analogous provisions of Crim.R. 19(D)(3)(a)(iii), the parties are relieved from the waiver rule and are permitted to raise assignments of error with respect to the magistrate's decision for the first time on appeal. *Picciano v. Lowers*, 4th Dist. Washington No. 08CA38, 2009-Ohio-3780, ¶ 18 ("[i]f the magistrate's decision does not comply with Civ.R. 53(D)(3)(a)(iii), then a party may assign as error on appeal the trial court's adoption of the magistrate's findings of fact and conclusions of law"); * * *.

Similarly, the Third and Seventh Appellate Districts have held that " '[i]f a magistrate fails to provide the parties with notice of the requirement to file objections, the aggrieved parties, at a minimum, are relieved from Civ.R. 53(D)(3)(b)(iv)'s waiver rule and are permitted to raise their arguments for the first time on appeal. * * * However, where the aggrieved party 'did not raise any arguments on appeal except for the magistrate's failure to abide by Civ.R. 53(A)(3)(a)(iii),' the appropriate remedy is to reverse the trial court's decision so that the party can have an opportunity to file objections to the magistrate's decision." (Citation omitted).

While there are different remedies employed for when a magistrate's decision does not comply with Crim.R. 19(D)(3)(a)(iii) or its analogous provisions, a common thread between them is that the failure must have resulted in prejudice in order for the remedy to apply. * * *

*Wheeler* at ¶ 10-14.

**{¶ 16}** We conclude that the Gerkens were prejudiced by the magistrate's failure to comply with Civ.R. 53(D)(3)(a)(iii) "because they failed to file objections to the magistrate's decision as a result." *Wheeler* at ¶ 14. This problem was exacerbated by the trial judge's order, which adopted the magistrate's decision within the same minute of when it was filed and was labeled "FINAL APPEALABLE ORDER." The trial court's advisement did not cure the magistrate's failure. We further conclude that, in this instance, the appropriate remedy is to reverse and remand the matter to the trial court so that the magistrate can prepare and file a decision that comports with the requirements of Civ.R. 53(D)(3)(a)(iii) and so that the Gerkens may then have the opportunity to file objections. Accordingly, the judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

. . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies sent to:

Jamie Anderson
Kevin Barber
Jennifer Stacy
Hon. Thomas J. Capper