[Cite as *Waxman v. Link*, 2020-Ohio-47.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| WILLIAM WAXMAN, et al. | : | |
| | : | |
| Plaintiffs-Appellees | : | Appellate Case No. 28415 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-4578 |
| | : | |
| DAVID S. LINK, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of January, 2020.

. . . . . . . . . . .

MICHAEL P. MCNAMEE, Atty. Reg. No. 0043861 and ALEXANDER W. CLOONAN, Atty.
Reg. No. 0095690, 2625 Commons Boulevard, Beavercreek, Ohio 45431
     Attorneys for Plaintiffs-Appellees

DAVID S. & CATHI L. LINK, 1561 Cambron Court, Vandalia, Ohio 45377
     Defendants-Appellants, Pro Se

. . . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Defendants/Appellants, David and Cathi Link, appeal from an order and entry interpreting the terms of a settlement agreement that the Links entered into with Plaintiffs/Appellees, William and Betsy Waxman. According to the Links, the trial court erred in granting a judgment that was not supported by admissible evidence and was not agreed upon by the parties. We conclude that a final appealable order does not exist. Accordingly, this appeal will be dismissed for lack of a final appealable order, and the case will be remanded for further proceedings.

## I. Facts and Course of Proceeding

**{¶ 2}** The parties in this case have been next-door neighbors since 1992, when the Links purchased the property next door to the Waxmans. In 1994, the Links installed a wooden fence separating the back yards of the two properties. There was apparently no dispute about the fence until May 2014, when a dispute arose over the fact that part of the fence was erected about 12-15 inches beyond the Links' property line, into the Waxmans' yard, and the remaining part was erected 12-15 inches inside the Links' own property. Over the next several years, the dispute escalated and involved various interactions with the police, the Timberwind Homeowners Association ("HOA"), and the City of Vandalia.

**{¶ 3}** In August 2017, the Waxmans' attorney sent a cease and desist letter to the Links, demanding that they immediately cease and desist from the following actions:

Attaching any items to the side of the fence facing the Waxmans' property, including, but not limited to flags, signs, lights, or ropes/strings;

Aiming any spotlights in the general direction of the Waxman's

property;

Removing any board from the fence that abuts the Waxmans' property;

Filming or taking pictures of the Waxmans <u>or</u> their property;

Moving or touching, in any way, whatsoever the Trumpet Vine plant which is located on the Waxmans' property;

Violating any of the Timberwind Homeowners Association protective covenants and restrictions; and

Conducting any other activities that hinder the Waxmans' quiet enjoyment of their property.

(Emphasis sic.)   Doc. #1, Verified Complaint, ¶ 54 and Ex. N attached to the Verified Complaint, p. 1.

{¶ 4} The letter further instructed the Links to immediately: (1) remove various items from the property line, like signs, tiki torches, plastic poles and tarps, fence posts, and drainage pipes; (2) close the gate to the Waxmans' property and keep it closed; and (3) fill in completely all trenches, ditches, and the like that had been dug on or near the Waxmans' property line.   Ex. N, p. 1-2.

{¶ 5} The Waxmans filed their complaint on October 2, 2017.   In the complaint, the Waxmans included five causes of action, including: (1) private nuisance – absolute; (2) trespass; (3) breach of the HOA covenants; (4) a request for a permanent injunction; and (5) a request for a declaratory judgment on adverse possession.   The Waxmans asked for the following relief: damages in excess of $25,000 for the first three claims; an injunction; and a declaration that the Waxmans had acquired a legal interest in the

property north of the fence through adverse possession or, alternatively, as a prescriptive easement. They also asked for costs, interest, attorney fees, and punitive damages.

{¶ 6} After David Link filed a pro se answer, the case was referred to mediation, which unsuccessfully terminated on March 5, 2018. The case was then referred to a magistrate on May 21, 2018. This rather simple dispute then devolved into a docket with 142 entries and a case with massive amounts of paper, primarily due to the repetitive filings by pro se litigant, David Link. The Links filed a motion for partial summary judgment on April 16, 2018, and the Waxmans filed a motion for summary judgment on May 15, 2018.

{¶ 7} Initially, trial was set for December 5, 2018. However, on October 26, 2018, the magistrate overruled the Links' motion for summary judgment and concluded that the Waxmans were entitled to summary judgment as to counts 1, 3, and 4 of their complaint. Since the trespass claim was the only claim left, the magistrate stated that this claim would be scheduled for trial.[1] Subsequently, on November 6, 2018, the Waxmans dismissed the trespass cause of action without prejudice.

{¶ 8} After the Links filed objections to the magistrate's decision, the trial court issued a decision and entry returning the case to the magistrate without ruling on the objections. The court then referred the matter to the magistrate for a damages hearing to be held on January 19, 2019. *See* Doc. #106. Prior to the damages hearing, the trial court filed an order granting a permanent injunction against the Links, based on the October 26, 2018 magistrate's decision.

---

[1] The Waxmans had already dismissed their claim for declaratory judgment on adverse possession, without prejudice, in April 2018.

{¶ 9} When the parties appeared for the damages hearing on January 19, 2019, they told the magistrate they had reached an agreement to settle the case. At that time, the parties placed the settlement terms into the record, and both David and Cathi Link specifically told the magistrate that they understood and agreed to the terms. Transcript of Proceedings, Settlement Agreement, pp. 5-6.

{¶ 10} According to the statement of the Waxmans' counsel during this hearing, the gist of the agreement was that the Links would pay the Waxmans, through counsel, a total sum of $20,000 over the course of 16 months, with payments of $1,250 to begin on February 17, 2019, and the final payment being due on May 17, 2020. *Id.* at p. 4. In addition, the Links agreed to erect a new fence on or near the property line separating the parties' properties. They also agreed to pay for all aspects of the new fence, including a survey to make sure the fence was erected in a proper location, and to construct it in accordance with the City of Vandalia's codified ordinances and the HOA covenants and restrictions. *Id.* The agreement further provided that the Links would "not engage in any conduct which is clearly designed at harassing, annoying, or aggravating the Waxmans," and specified that "[t]his conduct was delineated in the entry and order granting final permanent injunction." *Id.* at pp. 4-5. Furthermore, if an issue did arise, the Waxmans' attorney was to act as a mediator. *Id.* at p. 5.

{¶ 11} Under the agreement as stated in court, in exchange for the above provisions, the Waxmans were to ask the court to terminate the entry and order granting final permanent injunction and would represent to the court that the matter was resolved and that any damages hearings were unnecessary at the time. The Waxmans also requested that the court retain jurisdiction to enforce the agreement. *Id.*

**{¶ 12}** After the settlement agreement was placed on the record, the magistrate obtained statements from both sides indicating that they agreed with the settlement. The magistrate then set the matter out for 30 days and asked the Waxmans' counsel to circulate an entry. *Id.* at p. 6. However, attempts to produce a written order were unsuccessful, and the Waxmans filed a motion asking the court to enforce the settlement agreement. They also asked for a hearing, which was set for April 1, 2019.

**{¶ 13}** During the hearing, the magistrate tried to determine what the Links' objections were, starting with the second paragraph on page one of the proposed order that the Waxmans had enclosed with their motion to enforce the settlement. Transcript of Proceedings, Hearing on Motion to Enforce, p. 7. However, David Link stated that the Links had "an issue with the entire settlement" because it was a settlement agreement that was not in the record. *Id*. at p. 10. Link further said, "It's about our mediation discussions with Mr. Cloonan, which are privileged information, which includes the settlement agreement and we object to any discussion of a settlement agreement as part of privileged information and put in as any type of exhibit in this hearing." *Id*. at p. 11.

**{¶ 14}** When the magistrate attempted to return to the agreement to ascertain what the Links' objections were, David Link again stated that he was "not at liberty to discuss this because it's privileged information from a mediation." *Id*. He even refused to confirm his mailing address because it was "privileged information from the mediation." *Id*. at p. 12. After further discussion during which Link continued to raise privilege, the magistrate asked Link, "Did you want to go through this agreement or you do not?" *Id*. at 20. In response, Link said, "It's privileged information * * * and the answer is no * * * it's privileged. If I bring it into the machinery, it makes it – and I'm not going to do that."

*Id.*

**{¶ 15}** At that point, the magistrate said she would issue a ruling based on the motion to enforce and the subsequent filings, which included the Links' "combined memo contra to motion to enforce settlement agreement, motion in limine and motion to dismiss," and the Links' "amended combined memo contra to motion to enforce settlement agreement, motion in limine and motion to dismiss." Docs. #123 and 124.

**{¶ 16}** On April 24, 2019, the trial court referred the case to the magistrate, nunc pro tunc as of March 15, 2019, for trial and a decision "including findings of fact and conclusions of law on all issues of fact and law as prescribed by Ohio Civil Procedure Rule 53." Doc. #129, p. 1. This order further stated that "[a]ll case orders and entries subsequent to and during the pendency of this referral shall be signed only by the Magistrate unless otherwise ordered by the Court. This reference shall include action on all motions filed pursuant to R.C. 2323.51, including motions filed after judgment." *Id.*

**{¶ 17}** Subsequently, the magistrate filed an order and entry, noting that both defendants had acknowledged at the January 19, 2019 hearing that they agreed to the terms read into the record. The magistrate then imposed generally similar terms in the order and entry as the Waxmans had outlined in their motion to enforce the settlement agreement, together with a few terms that were not discussed during the January 19, 2019 hearing. Doc. #130. After the trial court signed the order, the Links filed a notice of appeal to our court on May 24, 2019.


## II. Alleged Abuse of Discretion in Judgment

**{¶ 18}** The Links' sole assignment of error states that:

The Trial Court Abused Its Discretion by Entering a Judgment in the Action on the Claims and Granting Relief That Was Not Supported by Admissible Evidence, Not Agreed Upon by All Parties as a Consent Order, Not Pursuant to the Terms of the Settlement Agreement, and Not Dismissing the Case.

{¶ 19} Before addressing the merits of the assignment of error, we must consider whether the order from which the Links have appealed is a final appealable order. This is a matter we can raise on our own initiative. *Guehl v. Carillon House Assn., Inc.*, 2d Dist. Montgomery No. 27438, 2017-Ohio-5491, ¶ 14.

{¶ 20} Under Ohio Constitution, Article IV, Section 3(B)(2), we have appellate jurisdiction only over final and appealable orders. "When a trial court refers a matter to a magistrate for a decision, the magistrate's decision is not a final appealable order. * * * The trial court's resolution of a referred matter, upon review of the magistrate's decision, must satisfy several requirements to be considered a final appealable order." *Keeney v. Keeney*, 2d Dist. Clark No. 19-CA-0037, 2019-Ohio-4098, ¶ 3. "First, the trial court's judgment entry must contain the trial court's own judgment and order on the underlying matter; it is insufficient for the trial court to simply adopt the magistrate's decision as its own order." *Id.* at ¶ 4, citing *State ex rel. Boddie v. Franklin Cty. 911 Admr.*, 135 Ohio St.3d 248, 2013-Ohio-401, 985 N.E.2d 1263, ¶ 2, *Harkai v. Scherba Industries, Inc.*, 136 Ohio App.3d 211, 218, 736 N.E.2d 101 (9th Dist.2000), and Civ.R. 53(D)(4)(e).

{¶ 21} In addition, "[t]he trial court's entry must sufficiently address the pending issues 'so that the parties may know of their rights and obligations by referring only to that document known as the judgment entry,' " the court must rule on pending objections if

they have been made, and "the judgment entry must 'be a document separate from the magistrate's decision.' " *Kenney* at ¶ 7, quoting *Kendall v. Kendall*, 6th Dist. Ottawa No. OT-13-019, 2014-Ohio-4730, ¶ 15. (Other citations omitted.) *See also Bennett v. Bennett*, 2012-Ohio-501, 969 N.E.2d 344, ¶ 20 (" 'Civil Rule 54(A) provides that "[a] judgment entry shall not contain a recital of pleadings, the magistrate's decision in a referred matter, or the record of prior proceedings." A trial court must render its own separate judgment and may not simply state that it approves, adopts, or incorporates a magistrate's decision.' ").

{¶ 22} With respect to the requirement of separate documents for a magistrate's decision and a judgment entry, both *Kenney* and *Bennett* relied on the provision in Civ.R. 54(A) that " '[a] judgment shall not contain * * * the magistrate's decision in a referred matter.' " *Kenny* at ¶ 7; *Bennett* at ¶ 20. However, Civ.R. 54(A) was amended, effective July 1, 2019, to eliminate that language. After the amendment, the rule states only that " 'Judgment' as used in these rules means a written entry ordering or declining to order a form of relief, signed by a judge, and journalized on the docket of the court."

{¶ 23} In light of the amendment, we conclude that where a trial court has entered judgment in the same document as the magistrate's decision, and where, as here, no objections are filed to that document, this court will have jurisdiction to review it if it otherwise meets the standards for a final order discussed above. However, the amendment does not apply to the case before us, because the notice of appeal was filed on May 24, 2019, before Civ.R. 54(A) was amended.

{¶ 24} Although Civ.R. 86(SS) provides that the amendments to various civil rules, including Civ.R. 54, that took effect on July 1, 2019, "govern all proceedings in actions

brought after they take effect and also all further proceedings in actions then pending," the rule is qualified. Specifically, the July 1, 2019 amendments apply "except to the extent that their application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies."

{¶ 25} Application of the amendment would not be feasible or would work injustice in the case before us for several reasons. In the first place, the document being appealed is labeled as an "order" and is not designated as a magistrate's decision. However, the matter was referred to a magistrate, who held a hearing, and then drafted and signed the "order." The document, therefore, was not an order; it was a magistrate's decision.[2] Less than one-half hour later, the trial court electronically signed the order. Due to the way the document was labeled, the Links would not have been alerted to the fact that objections could be filed, as opposed to taking an immediate appeal from the order.

{¶ 26} Recently, the Third District Court of Appeals noted "its growing concern over trial court magistrates and their understanding of their role in the judicial system." *Huntington Natl. Bank v. Greer*, 3d Dist. Union No. 14-15-01, 2015-Ohio-3403, ¶ 9. The court stressed that "[e]very member of the judicial system must understand and act accordingly with their position in the system. This includes magistrates. 'To presume a higher authority, or even to convey an appearance of more authority, than that which is

---

[2] Under Civ.R. 53, there is a distinction between decisions and orders. Civ.R. 53(D)(2)(a)(i) provides that "a magistrate may enter orders without judicial approval if necessary to regulate the proceedings and if not dispositive of a claim or defense of a party." In contrast, rules for magistrates' decisions are found in Civ.R. 53(D)(3)(a), and involve substantive matters.

authorized by law and the Civil Rules causes participants in the legal system to question the role of the trial judge.' "  *Id.* at ¶ 11, quoting *Roychoudhury v. Roychoudhury*, 3d Dist. Union No. 14-1419, 2015-Ohio-2213, at ¶ 25-26 (Rogers, P.J., concurring).

**{¶ 27}** We have also remarked that "[a]lthough magistrates 'truly do the " 'heavy lifting," ' * * * '[m]agistrates are neither constitutional nor statutory courts.  Magistrates and their powers are wholly creatures of rules of practice and procedure promulgated by the Supreme Court.  Therefore, magistrates do not constitute a judicial tribunal independent of the court that appoints them.  Instead, they are adjuncts of their appointing courts, which remain responsible to critically review and verify the work of the magistrates they appoint. * * * The magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function.' "  *Carpenter v. Johnson*, 196 Ohio App.3d 106, 2011-Ohio-4867, 962 N.E.2d 377, ¶ 8 (2d Dist.), quoting *Francis v. McDermott*, 2d Dist. Darke No. 1744, 2008-Ohio-6723, ¶ 12.  (Other citation omitted.)

**{¶ 28}** The "order" was also defective because it failed to comply with Civ.R. 53(D)(3)(a)(iii), which requires that "[a] magistrate's decision shall indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b)."  In a similar situation, we have reversed the case and remanded it so objections could be filed.  *Gerken v. Barber*, 2d Dist. Clark No. 2018-CA-65, 2019-Ohio-641, ¶ 16 (reversing and remanding the case to allow objections to be filed).

**{¶ 29}** In view of the above facts, it would be not be feasible and would be

inequitable to apply Civ.R. 54(A) retroactively. Accordingly, there is no final appealable order, and we lack jurisdiction over the current appeal.

### III. Conclusion

**{¶ 30}** Appellants' appeal is dismissed for lack of a final appealable order, and the case is remanded to the trial court for further proceedings.

. . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies sent to:

Michael P. McNamee
Alexander W. Cloonan
David S. & Cathi L. Link
Hon. Richard Skelton