[Cite as *Behnken v. Behnken*, 2020-Ohio-389.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| CLAUDIA BEHNKEN | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-39 |
| | : | |
| v. | : | Trial Court Case No. 2013-DR-59 |
| | : | |
| JOEL BEHNKEN | : | (Domestic Relations Appeal) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of February, 2020.

. . . . . . . . . . .

DAVID S. PETERSON, Atty. Reg. No. 0007836, 87 South Progress Drive, Xenia, Ohio
45385
    Attorney for Plaintiff-Appellee

JOSEPH A. COATES, Atty. Reg. No. 0040476, P.O. Box 2185, Fairborn, Ohio 45324
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} This case is before us on the appeal of Defendant-Appellant, Joel Behnken, from a judgment modifying his child support and visitation.[1] According to Joel, the trial court abused its discretion by failing to recalculate his child support arrearage retroactive to a motion filed in May 2016, by averaging his income over the past three years to calculate child support, by imposing an excessive support order that ignored the fact that he is disabled, and by unilaterally changing his mid-week visitation to a different day.

{¶ 2} We conclude that the trial court did not err in calculating Joel's child support or in choosing a date for purposes of calculating an arrearage. The support order was also not excessive. Finally, the court did not err in changing the day for midweek visitation. The parties agreed to child support and visitation, and, in his objections to the magistrate's decision, Joel did not dispute the existence of a settlement agreement, or the meaning of the agreement. As a result, our review is for plain error. Reviewing Joel's arguments, we conclude that there is no error, let alone plain error. Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 3} Joel and Plaintiff-Appellee, Claudia Behnken, were divorced in April 2014. The final judgment and decree of divorce resulted from the agreement of the parties and provided that Claudia would be the residential parent and legal custodian of their sole child, H.B., who was born in 2007. Joel was given parenting time pursuant to the court's standard order, with the exception that he was allowed to exercise parenting time every

---

[1] Because the parties have the same last name, we will use their first names for purposes of clarity.

other weekend, beginning on Thursday after school dismissed (or in the alternative, 6:00 p.m.), until Sunday at 6:00 p.m. On other weeks, he had weeknight visitation on Wednesday. Joel agreed to pay child support of $606.10 per month plus 2% processing, for a total of $618.22. If private insurance were not provided, Joel was to pay $573.41 and cash medical support of $105.50 per month, plus 2% poundage, for a total of $691.47. The decree also indicated a seek work order would be issued for Joel. At the time the decree was filed, Joel was unemployed, although he had previously been employed, earning about $115,000 per year. Claudia was on social security disability and had minimal income. Joel was ordered to pay spousal support in addition to child support.

{¶ 4} In May 2016, Joel filed a motion to modify child support, claiming he was unable to work and was in the process of applying for social security disability. Claudia then filed a contempt motion, based on Joel's failure to pay child support. In May 2017, an agreed entry was filed in which Joel voluntarily dismissed his motion due to a continuance of his social security claim. Joel also agreed to pay $2,000 for past child support, and Claudia's motion for contempt was also withdrawn "without prejudice".

{¶ 5} Subsequently, in June 2018, the Child Support Enforcement Agency ("CSEA") made an administrative modification of support, and Claudia filed an objection. The trial court then set a hearing on the matter for August 16, 2018, before a magistrate. However, on August 1, 2018, Joel filed a motion for legal custody of H.B. and for recalculation of the arrearage on child support. As a result, the magistrate appointed a guardian ad litem and set a final hearing for February 8, 2019.

{¶ 6} At the final hearing, the parties appeared and stated that they had reached agreement on all parenting and support issues. The magistrate then filed a decision

and order on February 12, 2019, which reflected the parties' agreement. Joel filed a notice of appeal to our court from the magistrate's decision on March 11, 2019, and then moved to dismiss his appeal on April 26, 2019.

{¶ 7} In the meantime, Joel asked the trial court on April 3, 2019, for leave to file objections to the magistrate's decision, and the court granted leave on April 11, 2019. Joel then filed objections to the magistrate's decision on April 24, 2019. After we dismissed the appeal on May 24, 2019, the trial court overruled Joel's objections on May 30, 2019. Joel filed another notice of appeal to our court on June 25, 2019.

## II. Calculation of Child Support Arrearage

{¶ 8} Joel's First Assignment of Error states that:

The Trial Court Abused Its Discretion by Failing to Recalculate Appellant's Child Support Arrearage Retroactive to Appellant's Original Motion Filed in May 2016.

{¶ 9} Before we address this assignment of error, we must consider the effect of the prior appeal of the magistrate's decision. Civ.R. 53(D)(3)(b)(i) provides that parties "may file written objections to a magistrate's decision within fourteen days of the filing of the decision." Joel did not file objections within this time period, but instead filed a notice of appeal to our court.

{¶ 10} The principle is well-recognized that " 'once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.' " *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 129 Ohio St.3d 30,

2011-Ohio-626, 950 N.E.2d 149, ¶ 13, quoting *State ex rel. Rock v. School Emps. Retirement Bd.*, 96 Ohio St.3d 206, 2002-Ohio-3957, 772 N.E.2d 1197, ¶ 8.

{¶ 11} Granting leave for the untimely filing of objections was inconsistent with our jurisdiction, and the trial court, therefore, lacked jurisdiction to grant the request. However, by the time the trial court ruled on the objections, the appeal had been dismissed and the trial court had regained jurisdiction over the case.

{¶ 12} Furthermore, Joel's prior appeal was not from a final appealable order. The magistrate filed her decision on February 12, 2019, and the trial court immediately adopted it, signing the same document. Before Civ.R. 54(A) was amended in July 2019, we had held that " '[t]he trial court's resolution of a referred matter, upon review of the magistrate's decision, must satisfy several requirements to be considered a final appealable order. * * * First, the trial court's judgment entry must contain the trial court's own judgment and order on the underlying matter; it is insufficient for the trial court to simply adopt the magistrate's decision as its own order.' " *Waxman v. Link*, 2d Dist. Montgomery No. 28415, 2020-Ohio-47, ¶ 20, quoting *Keeney v. Keeney*, 2d Dist. Clark No. 19-CA-0037, 2019-Ohio-4098, ¶ 4. We had also held that "[t]he trial court's entry must sufficiently address the pending issues 'so that the parties may know of their rights and obligations by referring only to that document known as the judgment entry' "; the court must rule on pending objections if they have been made; and "the judgment entry must 'be a document separate from the magistrate's decision.' " *Kenney* at ¶ 5-7, quoting *Kendall v. Kendall*, 6th Dist. Ottawa No. OT-13-019, 2014-Ohio-4730, ¶ 15. (Other citations omitted.)

{¶ 13} Failure to meet these requirements results in the lack of a final appealable

order.  *Id.* at ¶ 10.   Thus, if Joel had not dismissed his appeal, we would have dismissed it for lack of a final appealable order, because the trial court's signing the magistrate's decision on the same document did not comply with Civ.R. 54(A), nor did the judgment comply with the other requirements.[2]   Under these circumstances, we conclude that the trial court's decision to allow objections when it had no jurisdiction was harmless error, and we can appropriately consider the merits of this case.

{¶ 14} Turning to the assignments of error, Joel's first argument is that the trial court erred by failing to use the date of his initial request for modification of support (May 2016) rather than July 1, 2018, for purposes of modifying the support obligation.   In response to this argument, Claudia contends that the parties entered into an in-court agreement as to all issues, and that the agreement should stand.

{¶ 15} In her decision, the magistrate noted that the parties had agreed to all parenting issues and matters relating to child support and health insurance during the hearing, which was held on February 8, 2019.   Magistrate's Decision & Order (Feb. 12, 2019), p. 1-2.   In calculating support, the magistrate averaged Joel's income for the past three years and arrived at a figure of $22,600.   After using both parties' incomes, support with private health insurance was ordered at $311.77 per month, plus 2% processing, for a total of $381.01.   Joel was further ordered to pay an additional $62.35 per month, plus 2% processing, toward arrearages, effective July 1, 2018.

{¶ 16} Without private health insurance, Joel would pay child support of $275.32 per child and cash medical support of $87.33 per month, plus 2% processing fee, for a

---

[2] After the July 2019 amendments to Civ.R. 54(A), separate documents are no longer required for a magistrate's decision and judgment entry.   However, the other standards remain in effect.   *Waxman*, 2d Dist. Montgomery No. 28415, 2020-Ohio-47, at ¶ 22-23.

total of $369.90. Under this formula, he was to pay an additional $55.06 per month, plus the 2% processing charge toward arrearages, again, effective July 1, 1018.

{¶ 17} The Supreme Court of Ohio has held that "[w]here the parties in an action * * * voluntarily enter into an oral settlement agreement in the presence of the court, such agreement constitutes a binding contract." *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 285 N.E.2d 324 (1972), paragraph one of the syllabus. Furthermore, "[i]n order to effect a rescission of a binding settlement agreement entered into in the presence of the court, a party must file a motion to set the agreement aside; and, in the absence of such motion, a trial court may properly sign a journal entry reflecting the settlement agreement." *Id*. at paragraph two of the syllabus. Settlement agreements are highly favored by the law. *Infinite Sec. Solutions, L.L.C. v. Karam Properties II, Ltd.*, 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, ¶ 16.

{¶ 18} The Supreme Court of Ohio has also said that "[w]here the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337 (1997), syllabus. However, [i]n the absence of such a factual dispute, a court is not required to conduct such an evidentiary hearing." *Id*. at 377, citing *Mack v. Polson Rubber Co.*, 14 Ohio St.3d 34, 470 N.E.2d 902 (1984), syllabus.

{¶ 19} In the case before us, Joel did not file a motion to set aside the agreement. He did file objections to the magistrate's decision. However, in the objections, Joel did not dispute the existence of a settlement agreement, nor did he dispute the meaning of the agreement. Instead, he simply disagreed with the changes to which he had agreed.

*See* Objections to Magistrate's Order (Apr. 24, 2019), p. 1-2. Under the circumstances, the trial court did not have to hold an evidentiary hearing before entering judgment enforcing the agreement. *E.g., In re Z.B.*, 2d Dist. Champaign No. 09-CA-42, 2010-Ohio-3335, ¶ 24 (noting that the appellant simply appeared to have had a change of heart and no longer wanted to abide by the settlement terms.)

{¶ 20} Here, Joel acted as if no settlement agreement had been made, which was untrue. On every matter that is being challenged on appeal, Joel and his counsel expressed agreement at the hearing. *See* Transcript of Proceedings (Tr.), p. 7, 9, 10, 13-14, 21, 23, and 25.

{¶ 21} Furthermore, Joel did not raise the validity of the settlement agreement in his objections. To the contrary, Joel only criticized the magistrate's decision, contending that he should have been given off-week parenting time on Wednesdays, rather than Thursdays, that the magistrate should have awarded minimum support from the time Joel was injured on June 15, 2015, and that the magistrate incorrectly decided to only modify support from around the time Claudia's objections were filed, i.e., July 1, 2018.

{¶ 22} Civ.R. 53(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Here, while Joel objected to some of the magistrate's findings, his reason was not that the terms were vague or that he did not agree to the terms. Therefore, we review only for plain error, which is not favored in civil cases, and " 'may be applied only in the extremely rare case involving exceptional circumstances

where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Roemmich v. Roemmich*, 2d Dist. Greene No. 07CA99, 2008-Ohio-6047, ¶ 10, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

**{¶ 23}** Our review of the record reveals no plain error warranting reversal of the trial court. First of all, Joel agreed to have $22,600 used as his income for purposes of calculating child support. Tr. at p. 10. His counsel further stated with respect to calculating arrearages, that "we are in agreement with doing that [using the statutory minimum of 20% to calculate payment of arrearages] and making it effective going back which would be to the date that the Administrative Order went on and I think that was effective July 1, 2013. So that would give Mr. Behnken a credit toward his arrearage."[3] Thus, Joel agreed to use of the date of July 1, 2018 for calculating support and arrearages based on the reduction of support.

---

[3] Counsel clearly misspoke and intended to use the date of July 1, 2018, rather than July 1, 2013. The latter date was before the divorce was even granted. The 2013 date could also have been a mistake in transcription. In either case, only one administrative order was entered in this case relating to child support, and that occurred on June 27, 2018. Claudia's objection to the administrative order was filed on July 9, 2018. In rejecting Joel's objections, the trial court commented that the date of July 1, 2018, was "essentially back to the date of filing of the administrative Objection." Entry Overruling Objections (May 30, 2019), p. 7. The court's choice of date is consistent with R.C. 3119.71(B), which provides that "[i]f the obligor or obligee requests a court hearing on the revised child support amount and the court, after conducting a hearing, modifies the court child support amount under the order, the modification shall relate back to the first day of the month following the date on which the review of the court child support order began pursuant to division (A) of section 3119. 60 of the Revised Code." The review pursuant to R.C. 3119.60(A) is an administrative review by the CSEA. Here, CSEA's administrative order was issued June 27, 2018, and July 1, 2018 would have been the first day of the following month. The record does not indicate when the CSEA review "began".

{¶ 24} However, even if the objection had properly been made and we reviewed for other than plain error, the trial court did not commit error in overruling Joel's objection. In doing so, the trial court relied on R.C. 3119.83 and R.C. 3119.84. Entry Overruling Objections (May 30, 2019), p. 7.

{¶ 25} R.C. 3119.83 provides that "[e]xcept as provided in section 3119.84 of the Revised Code, a court or child support enforcement agency may not retroactively modify an obligor's duty to pay a delinquent support payment." R.C. 3119.84 further states that "[a] court with jurisdiction over a court support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered." "This provision plainly states that a court may retroactively modify a child-support payment that became due *after* the obligee of the order had notice of the petition to modify the support order." (Emphasis added.) *Byrd v. Knuckles*, 120 Ohio St.3d 428, 2008-Ohio-6318, 900 N.E.2d 164, ¶ 4.

{¶ 26} "[A]bsent some special circumstance, an order of a trial court modifying child support should be retroactive to the date such modification was first requested." *State ex rel. Draiss v. Draiss*, 70 Ohio App.3d 418, 421, 591 N.E.2d 354, 356 (9th Dist.1990). *Accord Goddard-Ebersole v. Ebersole*, 2d Dist. Montgomery No. 23493, 2009-Ohio-6581, ¶ 8. In this regard, we have said that " 'a trial court may modify non-delinquent child support obligations retroactively to a date prior to the filing of the motion to modify if special circumstances are demonstrated.' " *In re J.S.*, 2d Dist. Montgomery No. 24597, 2012-Ohio-421, ¶ 21, quoting *Torbeck v. Torbeck*, 1st Dist. Hamilton No. C-010022, 2001 WL 1251219 (Sept. 28, 2001).

{¶ 27} The special circumstances required are extraordinary matters like fraud or wrongdoing, such as when an obligor fails to report income changes or conceals his or her income. In that situation, a court may be able to modify support retroactively to a date prior to the filing of the motion to modify support. *Id.* at ¶ 22. *See also In re K.A.V.*, 2d Dist. Montgomery No. 26312, 2014-Ohio-5575, ¶ 11, fn. 3.

{¶ 28} Such circumstances are not present here, as there is no evidence of any type of fraud. In addition, *J.S.* limits the application to non-delinquent support obligations, and Joel was delinquent in his support at the February 2019 hearing. Specifically, at the hearing, the magistrate noted that Joel had never paid any spousal support as ordered, and that he owed $6,800. In addition, Joel owed $14,629.36 in child support, $4,887.12 in cash medical support, and $1,440.74 in fees. Despite the fact that Joel had received $54,000 in 2018, he had paid almost nothing on these obligations. Tr. at p. 10 and 18. Thus, at the time of hearing, Joel was, at a minimum, more than 28 months in arrears.[4]

{¶ 29} Moreover, if the trial court had ordered child support decreased retroactively to a time before Claudia's objection to the CSEA's administrative modification was filed in July 2018, it would have violated R.C. 3119.83. As noted, R.C. 3119.83 prohibits courts from retroactively modifying delinquent obligations. Since Joel was delinquent in child support well before the date of Claudia's objection in 2018, the trial court could not have modified support to an earlier date.

---

[4] Joel was originally ordered to pay either $618.22 or $691.47 in child support per month, depending on whether private insurance was provided. The arrearage at the hearing was $19,516.48 (child support of $14,629.36 and $4,887.12 in cash medical support). Dividing the arrearage by $618.22 results in an arrearage of more than 31 months; dividing the arrearage by $691.47 results in an arrearage of more than 28 months.

{¶ 30} For the reasons discussed, the First Assignment of Error is overruled.

III.   Averaging Income

{¶ 31} Joel's Second Assignment of Error states that:

The Trial Court Abused Its Discretion by Erroneously Averaging Appellant's Income Over the Past Three Years to Calculate Child Support.

{¶ 32} Under this assignment of error, Joel contends that the trial court abused its discretion by averaging Joel's income over the past three years to determine what his income should be for purposes of child support.   According to Joel, the court should have considered his lack of income in 2016, his inability to work because of a severe work-related injury, and the minimum amount of support ordered by the CSEA.

{¶ 33} As noted, Joel did not file a motion to set aside the agreement, nor did he ask in his objections to set aside the agreement.   We, therefore, review this alleged error for plain error.   Civ.R. 53(D)(3)(b)(iv); *Roemmich*, 2d Dist. Greene No. 07CA99, 2008-Ohio-6047, at ¶ 10.   Again, we find no plain error warranting reversal of the trial court.

{¶ 34} At the hearing, the magistrate indicated she would average the past three years of Joel's income (zero in 2019, $54,000 in 2018, and $13,000 in 2017), for an average income of $22,600.   When the magistrate made this remark, Joel's counsel responded, "That is the correct amount of income your Honor, yes."   Tr. at p. 10.   After the magistrate calculated the child support, Joel's attorney stated that his client's position was that he was not able to pay anything, as he did not have current income.   At that point, the magistrate noted that Joel had not submitted any proof regarding his worker's compensation claim in West Virginia (which allegedly had been granted and was then on

appeal by the employer) or his Social Security disability claim (which had been denied). In addition, Joel had not submitted a doctor's statement that he could not work. *Id.* at p. 15-16.

**{¶ 35}** The magistrate then allowed Joel and his attorney to confer outside the courtroom, to see what they wished to do, i.e., enter into the agreement or call witnesses and have a trial. *Id.* at p. 20. They then returned and Joel's counsel stated, "Well your Honor at this point we will agree with the calculations you performed regarding the * * * the current support and what the current support will be." *Id.* at p. 21.

**{¶ 36}** During the hearing, the magistrate commented several times that she had the entire day scheduled for the hearing and stressed that the parties could call any witnesses they wanted. *Id.* at p. 6, 7, 8, 9, 17, 19, and 20. However, at all times, Joel decided to continue with the agreement rather than proceed to trial. *Id.* at p. 7, 9, 10, and 21.

**{¶ 37}** In rejecting Joel's objection about the calculation of child support, the trial court noted Joel's agreement during the hearing. *See* Entry Overruling Objections (May 30, 2019), p. 5. The court found that after being informed of insufficient evidence regarding his claim of being disabled, Joel conferred with his attorney and refused the offer to put on evidence. Furthermore, the court noted that even if Joel's agreement were disregarded, there was no evidence upon which to find that a minimum support order would be warranted. In this vein, the court said, "Other than his testimony that he has a Worker's Comp claim in West Virginia, Defendant was unable, or refused, to present any evidence that he is currently unable to work." *Id.* at p. 6. Again, after reviewing the record, we find no basis for reversing on the basis of plain error.

{¶ 38} Even if we reviewed this assignment of error for other than plain error, we would find no error on the trial court's part. Child support orders are reviewed for abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 39} Our review of the record indicates no abuse of discretion. Joel was given ample opportunity to present evidence if he wished; he chose not to do so, and instead entered into an agreement about averaging his income for purposes of child support.

{¶ 40} Accordingly, the Second Assignment of Error is overruled.


## IV. Amount of Child Support

{¶ 41} Joel's Third Assignment of Error states that:

> The Trial Court Abused Its Discretion in Imposing an Excessive Child Support Order, Disregarding the Administrative Order Imposed by the Child Support Enforcement Agency (CSEA) and the Fact That Appellant Is Disabled and Unable to Work.

{¶ 42} Under this assignment of error, Joel essentially repeats what he said in relation to the previous assignment of error. He contends that he is disabled and is not voluntarily unemployed, and that the trial court should have taken this substantial change of circumstances into account.

{¶ 43} Notably, the trial court did reduce Joel's support by about $300 per month, per the parties' agreement, as we mentioned. For the reasons discussed in connection with the preceding assignment of error, we find neither error nor plain error. The Third Assignment of Error, therefore, is overruled.


V. Visitation

{¶ 44} Joel's Fourth Assignment of Error states that:

> The Trial Court Abused Its Discretion by Unilaterally and Arbitrarily Changing the Midweek Visitation Time for Appellant.

{¶ 45} Under this assignment of error, Joel contends that the trial court erred in changing his midweek visitation from Wednesdays to Thursdays when neither party had requested a change in the parenting schedule. As a preliminary point, this assertion is incorrect, as Joel had filed a motion to change legal custody, which would obviously involve a change in parenting schedules, if successful. As a result of the motion, a guardian ad litem was appointed and made a number of recommendations.

{¶ 46} Nonetheless, as with the other matters of which Joel complains, Joel agreed to the parenting schedule. Tr. at p. 9. In his objections to the magistrate's decision, Joel also did not dispute the existence of a settlement agreement, nor did he dispute the meaning of the agreement. Consequently, we review for plain error only. Civ.R.

53(D)(3)(b)(iv); *Roemmich*, 2d Dist. Greene No. 07CA99, 2008-Ohio-6047, at ¶ 10.   After reviewing the record, we find no error, let alone plain error.

**{¶ 47}** At the hearing, Joel did not object to the change of parenting time from Wednesdays to Thursdays.   His only complaint was that he wanted to pick up his daughter at 3:00 p.m. rather than 4:00 p.m.   Tr. at p. 7.   However, he then agreed to the schedule as proposed.   *Id.* at p. 9.   Again, even if we were reviewing for abuse of discretion, we would find no abuse.   As the trial court and the magistrate both noted, the schedule was the one recommended by the GAL, and the parties agreed to it.   Tr. at p. 5-6, and 9; Entry Overruling Objections (May 30, 2019), p. 3.   Accordingly, there was nothing irrational, arbitrary, or unreasonable about this decision.

**{¶ 48}** Based on the preceding discussion, the Fourth Assignment of Error is overruled.

## VI.   Conclusion

**{¶ 49}** All of Joel's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

David S. Peterson
Joseph A. Coates
Hon. Steven L. Hurley