**[Cite as *Johnson v. Johnson*, 2021-Ohio-16.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| TONYA C. JOHNSON | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2020-CA-25 |
| | : | |
| v. | : | Trial Court Case No. 2018-DR-783 |
| | : | |
| DONALD W. JOHNSON | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of January, 2021.

. . . . . . . . . . .

VALERIE JUERGENS WILT, Atty. Reg. No. 0040413, 333 North Limestone Street, Suite 202A, Springfield, Ohio 45503
     Attorney for Plaintiff-Appellant

REGINA ROSEMARY RICHARDS, Atty. Reg. No. 0079457, 202 Scioto Street, Urbana, Ohio 43078
     Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Tonya C. Johnson appeals from the trial court's final judgment granting her a divorce from Donald W. Johnson. Specifically, she argues that the trial court erred in failing to address Donald's retirement benefits in its division of marital property, in its failure to award her spousal support, and in issuing a vague order for Donald to "be responsible for all outstanding bills associated with the prior marital residence." Because we find that these arguments have merit, we reverse the trial court's judgment and remand for it to address Donald's retirement benefits, reconsider spousal support in light of its distribution of the retirement benefits, and clarify its order with respect to the outstanding bills.

{¶ 2} Donald and Tonya Johnson were married on August 24, 1996, and two children were born of the marriage; one of the children was emancipated by the time of the parties' divorce. On September 5, 2018, Tonya filed a complaint for divorce, a motion for a "temporary mutual restraining order" (TMRO), and a motion for other temporary orders. The court granted the TMRO on September 7, 2018.

{¶ 3} On October 15, 2018, the magistrate issued temporary orders after a hearing. The magistrate designated Tonya as the sole residential parent of the minor child and granted Donald parenting time "as the parties agree." The magistrate also gave Tonya exclusive use of the marital residence, ordered Donald to pay the mortgage and utilities for the marital residence each month, and ordered Donald to pay monthly child support of $638.39. The child support worksheet on which the child support calculation was attached to the order; it listed Donald's income as $58,551.67 and Tonya's income as zero.

{¶ 4} On November 1, 2018 Donald filed a motion for leave to file an answer to the

complaint for divorce and an answer. On November 6, 2018, he filed a motion for modified temporary orders, and on November 7, he filed an affidavit in support of modified temporary orders. In his affidavit, Donald asserted that Tonya had "(mistakenly) omitted her gross income" in her filings with the court, specifically her schedule C income for fostering children, which annually averaged $50,658.33, based on the Schedule C attached to the parties' joint 2015-2017 tax returns. Donald argued that the inclusion of Tonya's income for purposes of calculating child support would decrease the previously ordered temporary child support from $638.39 to $418.62 per month, plus the processing fee. Donald further asserted that Tonya had not been agreeing to any parenting time for him and that she had been discussing the parties' marital problems with the minor child. Donald requested an order of temporary shared parenting.

{¶ 5} On November 29, 2018, Tonya filed a motion to find Donald in contempt, which asserted that Donald had failed to pay the mortgage and utilities for the marital residence and to pay child support.

{¶ 6} On December 11, 2018, Donald filed a counterclaim for divorce and custody. His attached an Affidavit of Property, which listed, under "Pensions and Retirement Plans": State of Ohio/OPERS, value "unknown."

{¶ 7} On February 12, 2019, Donald filed a motion for a continuance of the evidentiary hearing, asserting that Tonya had not fully responded to his discovery requests and that he had "a significant health concern" that would likely result in "a substantial change of circumstances" before the divorce could be finalized. On the same day, he filed a motion to compel, which asserted that Tonya had failed to comply with his requests for "all charge account statements" for the past 12 months, for copies of all bank

account statements, and for responses to his interrogatories requesting the identity of her witnesses for trial and copies of any exhibits she intended to introduce. Donald attached an email and written correspondence from his attorney to Tonya's attorney, dated January 31, 2019, which stated that Tonya's discovery responses had been due on January 4, 2019.

{¶ 8} On February 12, 2019, Donald also filed a motion for an in camera interview the parties' minor child regarding the child's wishes with respect to the allocation of parental rights. Additionally, Donald filed a motion for contempt, with an affidavit and multiple exhibits. The motion for contempt asserted that Tonya had violated the TMRO by selling property from the marital residence, that she had "attempted to force the sale" of the marital residence, that she had repeatedly harassed him by phone and at his residence, that she had alienated the minor child from him, and that she had failed to disclose her full income.

{¶ 9} On February 15, 2019, a magistrate indicated that Donald's motion for an in camera hearing would be "held under advisement" until after the hearing.

{¶ 10} On April 9, 2019, Donald filed a "Notice of Change of Circumstances," in which he asserted that was receiving daily radiation and weekly chemotherapy for cancer and was on a feeding tube. Donald asserted that his income would "change immediately to 70% of his regular income." An April 9, 2019 correspondence from Jennifer Miller, Human Capital Management Analyst from Martin and Richards Co., L.P.A., was attached to the notice; the correspondence stated that Donald went on disability leave beginning on April 8, 2019, that his normal hourly wage was $22.00, and that he would earn $15.40 per hour while on disability leave.

{¶ 11} On April 26, 2019, the magistrate scheduled a hearing on the complaint and all pending motions on June 7, 2019.

{¶ 12} On June 3, 2019, Donald filed another request for a continuance, asserting that his oncologist wanted him to "rest for at least thirty days." Donald also renewed his prior request to reduce his support obligation due to a significant change in circumstances; he asserted that he still was not working due to cancer and only received 60% of his income. The magistrate granted the motion to continue the hearing and scheduled an in camera interview with the minor child.

{¶ 13} The evidentiary hearing occurred on October 7, 2019. The following evidence was presented at the hearing:

{¶ 14} Tonya testified that she was employed by South Community, Inc., as a foster parent and had one foster child; she earned $1,500 per month. She stated that she had had "quite a few" foster children over 13 years, and that when Donald resided with her she had three foster children in their home. She stated that, at that time, she had received $1,500 for two of the children and $1,800 for the third child. Tonya stated that two of the children had been removed from her care "in September." According to Tonya, Donald had tried to work things out with her several times, and on the last occasion, there was "a big incident." She stated that she had "discovered about five to seven bottles of steroids, that Donald had received phone calls from his live-in girlfriend, and that he "got outraged, put his hands on" her, and "took off." Tonya stated that the two foster children were removed from her care because Donald called the police on her, his girlfriend called Children's Services, and Donald called her supervisor. The third foster child was from a different county, which "did not believe the history," and therefore

was not removed. Thus, Tonya asserted that Donald had caused her "to lose $3,000 a month."

{¶ 15} Tonya stated that Donald was employed as a corrections officer at Madison Correctional Institution and earned about $50,000 a year. Tonya stated that Donald had been unable to work for some time, but that he was working full time plus a lot of overtime at the time of the hearing. She stated that she received $334 from Donald every two weeks in child support.

{¶ 16} Tonya stated that she had prepared a proposed settlement and that she wanted sole residential custody of the minor child. She also wanted "full medical for [the child], dental and vision, [and] for myself as well." Tonya was receiving full benefits through Donald's employment at the time of the hearing, and she wanted that arrangement to continue so that she could "continue therapy for the mental, extreme cruel mental abuse and physical abuse that I have had."

{¶ 17} Further, Tonya stated that she wanted to claim the minor child for tax purposes, because she planned to go back to school and would need "all the help that [she] can get." Tonya testified that Donald had been ordered to make the house payments and pay the utilities, but that he "did absolutely nothing of that." She stated that the marital residence went into foreclosure, that she sold it by herself, that they made no money off of it, and both "had to bring money to closing." Tonya stated that she had to pay approximately $800 to close the sale.

{¶ 18} Tonya testified that she had moved to her mom's basement so she could stay in the same school district. She asked that the marital debt, her attorney fees, and court costs be paid by Donald. Tonya also asked for 60 percent of Donald's retirement

account and child support.

{¶ 19} Tonya testified that her monthly expenses were as follows: she paid $600 per month to her mom, $389 for her car payment, $335 for car insurance for herself and her daughter, roughly $ 300 for utilities, $300 for food, approximately $300 for dental, and $300 for credit cards. Tonya stated her monthly expenses totaled $2,659. With respect to student loans, Tonya stated that she was "on a program," but that it would change in the next four months and she did not know how much the payment would be. She stated that she could not re-enroll in school until her loan was caught up.

{¶ 20} Tonya stated that the parties' minor child began visiting with Donald after he became ill with cancer, but that she rarely had done so before then. She stated that Donald "never paid one dime" of what he was ordered to pay from the court's first order. These included the water bill "from August of when he left until I sold the property," for a total of $1,335; a gas bill from Columbia Gas of $1,758.43; Spectrum cable, internet, phone, "everything in one," for $2,019.26; a trash bill for $165.75; and $800 for two cell phone bills. Further, Tonya testified that Donald never made a house payment, and that if he had done so, they "would have made money off the house" and she would not have had to move in with her mom. Tonya stated that Donald "took a hammer" to a door from the garage to the home and never fixed it, "rammed his forehead" through her bedroom wall, "shattered" her TV, broke a door, broke her bed, and "kicked out the bannister on the way out." Tonya testified that she spent $300 on home repairs. Tonya stated that she wanted Donald to pay her expenses and for their lost income on the sale of the house. Finally, Tonya testified that she was 46 years old, that she and Donald had separated on August 10, 2018, and that they had been married for 23 years.

{¶ 21} On cross-examination, Tonya testified that she complied with all discovery requests and was unaware of Donald's contempt motion. Tonya stated that the marital home went into foreclosure because Donald failed to make the house payments. Tonya stated that she knew Donald was on disability for cancer treatment between April and July 2019. When asked if she recently had received some money for cashing in one of Donald's retirement benefits," Tonya responded that she did not cash it in, Donald did, and that it was "deferred comp, * * * like a savings account," not a retirement account. Tonya stated that she and Donald each received $5,500 after he cashed in the deferred compensation. Tonya acknowledged that she also received $1,200 from Donald to pay for the minor child's braces while he was receiving cancer treatment.

{¶ 22} Tonya stated that she and Donald had both been foster parents, but the foster care income had been "in Donald's name only." When shown her 2017 tax returns and asked whose names appeared thereon, Tonya responded, "Donald and Tonya Johnson," but that "is not my income." She testified that the foster care income had never been in her name until September 2018. When asked if she could prove that the two foster children were removed from her care due to Donald's conduct, Tonya responded affirmatively and explained that Donald had contacted her supervisor, who was a director of the foster care agency, and then she lost two of the kids. She also stated that her home was investigated. Tonya testified that the house payment had been $1,460 per month.

{¶ 23} Donald testified that he was cancer free and receiving full pay at the time of the hearing, but that from April until July 2019, he had received only 70% of his income due to cancer treatment. He stated that, during that time, he had radiation five days a

week, underwent chemotherapy, and got "fluids on the weekends" for throat cancer. He requested that the court modify his support order based on the change in circumstances during that period. Donald testified that Tonya had failed to disclose her foster care income, and he requested that his support order also be modified based on Tonya's foster care income. He stated that Tonya became eligible for additional foster children after he attended foster care classes. Donald testified that Tonya was not honest about her "alcohol issues" and that she sounded intoxicated in some of her voice messages to him. Donald acknowledged breaking a door at the marital home when the parties could not get inside. Donald testified that he wanted the court to give him "an offset" from his retirement money for the $5,500 that Tonya received from his deferred compensation; he also noted that he had paid $1,500 toward the minor child's braces, which Tonya did not split with him. He wanted the court to recognize that Tonya had already received some money. Donald acknowledged that Tonya was entitled to half of his retirement accounts.

{¶ 24} Donald testified that he had close to a dozen messages on his phone and at work from Tonya threatening to sell the house; he provided a disk of the messages, but counsel was unable to play the messages for the court. Donald testified that he worked from 6:00 a.m. to 2:00 p.m. Monday through Friday, and that he refrained from working overtime because he tired easily and his immune system was "very low." Donald testified that he suffered from "chemo brain" and could be forgetful. He stated that his home was appropriate for the minor child to visit and that he would like to see her every day. He asked the court to order specific parenting time for him. Donald stated that he had weekends off, but he would also like to see the child during the week after work. He testified that he had never been convicted of domestic violence. Donald

testified that Tonya once showed up at his work and chased him in his car when he left, that she had been violent toward him, and that she once threw a candle at him. When asked if he had ever injured Tonya, he responded, "[o]nly in self-defense," when he attempted to push her away from him. Donald stated that Tonya had struck him in his "[f]ace, back of the head, [and] mouth" over his "cheating." He stated that once Tonya came to his home uninvited, and he identified a police report from that incident.

{¶ 25} On cross-examination, Donald stated that he had lived with Brook Terry for eight months and paid no rent during that time, but he "bought groceries." He stated that he and Tonya had both put holes in the walls of their home. Donald asked for custody of their child. He stated that his current rent was $715 per month, and he made $45,000 per year. Donald stated that he had been employed at Madison Correctional Institution for almost 23 years. When asked if he was satisfied that all the mortgage payments were made while he was ill, Donald responded, "I assumed they did. * * * I wasn't the one paying the bills."

{¶ 26} Shortly after the hearing was held, Donald filed a motion to admit the exhibits introduced at the evidentiary hearing, which he filed under seal. The motion stated:

> Now comes Defendant, Donald W. Johnson, through undersigned counsel,
> and hereby moves this Court to admit Joint Exhibits 1-8 and Defendant's
> Exhibits A, B, F, I, U, T, W1-5, X, Y, which were introduced at the evidentiary
> hearing on 7 October 2019. Plaintiff stipulated to Exhibits 1-8. Plaintiff did
> not object during the evidentiary hearing to the introduction of Defendant's
> proffered exhibits. The Court appeared to have recessed but adjourned.

Plaintiff did not move to admit before the Court adjourned. Defendant attempted to admit after the Court adjourned while Plaintiff was still present. Plaintiff objected. The Court refused. Defendant moves to admit the attached exhibits (filed under seal).

{¶ 27} On January 16, 2020, the magistrate's decision was filed.[1] In the findings of fact and conclusions of law, the magistrate referenced the attached child support calculation sheet, which it had based on "the testimony of the parties as to their respective incomes and appropriate deductions." The worksheet stated annual income in the amount of $57,979.67 for Donald and $18,000 for Tonya. The magistrate observed that the parties had sold their marital residence and that Tonya had testified that she had to bring $700-$800 to the closing as a result of Donald's failure to pay the mortgage as ordered. The magistrate also noted that Tonya alleged that Donald had not paid the water, gas, trash, or Spectrum bills as ordered.

{¶ 28} With respect to Tonya's request for spousal support, the magistrate found that Tonya and Donald had "relatively similar earning ability and earned substantially similar salaries during the marriage," that the parties were the same age, and that Donald had been through a significant illness but had recovered and returned to work. The magistrate stated that the "retirement benefits of the parties were not offered" and that it would not be "inappropriate" for Tonya to work outside the home if she were the custodial parent.

{¶ 29} According to the magistrate, there was little evidence of the parties'

[1] This journal entry provided: "The magistrate's Decision and Order attached herewith is adopted and ratified by this Court in its entirety and therefore made an Order of this Court."

standard of living during the marriage, and information about their respective educations was not offered. The magistrate noted that Donald had a child support obligation of $584.67 per month and was also being assessed much of the marital debt. The magistrate found no evidence of any significant contribution by either party to the education, training, or earning ability of the other party and found that Tonya did not require additional training to earn a salary comparable to Donald's. The magistrate found no evidence that Tonya "lost a significant remunerative skill as a result of marital responsibilities." After considering the parties' need for and ability to pay spousal support, their relative assets, liabilities, and incomes, the need to avoid drastic or abrupt changes in lifestyle, and the need for each party to have a reasonable standard of living in relation to the standard maintained during the marriage, the magistrate found that an award of spousal support was not appropriate in the Johnsons' case. The court did not retain jurisdiction over the issue of spousal support.

{¶ 30} With respect to child custody, an in camera interview was conducted with the minor child and the child's wishes were considered. The magistrate noted that Tonya testified that she had no problem with Donald having parenting time and Donald testified that he had been denied parenting time, although there was no evidence to substantiate the denial of parenting time. The magistrate found that custody to Tonya with parenting time for Donald in accordance with the court's standard order was in the child's best interest.

{¶ 31} Financially, the magistrate noted that the parties each had accounts in their own name and found it equitable that each party be awarded the accounts in their own name. With respect to their various debts, the magistrate found that each party should

be responsible for the debts in his or her own name, except the debts associated with the prior marital residence. The magistrate found that the debts associated with the marital residence, which accrued as a result of Donald's failure to pay them as required in the temporary order, would be solely Donald's responsibility.

{¶ 32} The magistrate awarded each party the personal property in his or her possession and all accounts, including retirement accounts, "in their sole name free and clear of the other." The magistrate ordered that Donald would be responsible for all outstanding bills associated with the prior marital residence; other than those debts, the parties would be responsible for any debts in their own name. Finally, the court ordered Donald to continue to pay child support in the amount of $584.67 per month, and cash medical support and processing fees, plus an additional $58.00 per month toward the arrearage.

{¶ 33} Tonya filed objections to the magistrate's decision on January 24, 2020. Specifically, she argued that, after 26 years of marriage, it was inappropriate for her to be denied spousal support, any portion of Donald's retirement, help with the payment of marital bills, and health insurance (which Donald had allegedly cancelled). She also objected to the fact that Donald was not ordered to maintain health insurance on their minor child.

{¶ 34} On February 4, 2020, Donald also filed objections to the magistrate's decision. Donald asserted that the magistrate erred in not "tak[ing] exhibits at the closing of the evidentiary hearing," not designating which party could claim the minor child for tax purposes in which year(s), and not taking into account his reduced income during the divorce proceedings when he was being treated for cancer and was unable to work. In

response to Tonya's objections, Donald also made the following arguments and corrections: 1) the parties were married for 23 years, not 26 years; 2) Tonya received over $5,500 from Donald's deferred compensation while the divorce proceedings were pending and other miscellaneous funds from the sale of the martial property, including, without limitation, the house and the furnishings within it; 3) Donald did not remove Tonya from his health insurance; and 4) Donald was ordered to maintain health insurance on the minor child pursuant to the magistrate's order.

{¶ 35} On June 11, 2020, the court held a hearing on the parties' objections.  At the start of the hearing, the court indicated that the parties could address any issues that, in their opinion, had not been adequately addressed in the pleadings they had filed, could supplement the record, and could respond to the other party's objections or clarify their own objections, with the caveat that they could not add to the objections.  Tonya's attorney indicated that they had nothing to add.

{¶ 36} Donald's attorney requested that the court admit the exhibits he had filed under seal; he also noted the magistrate's failure to designate which party should claim the minor child for tax purposes in which years and the magistrate's failure to find that Donald's income had been substantially reduced during the divorce proceedings while he was receiving cancer treatment.  Additionally, Donald's attorney noted that Donald sought a reduction of child support based on his substantial change of circumstances due to cancer treatment, which had included treatment by multiple doctors, a feeding tube, and temporarily relocating to Columbus for treatment; during that period, he had earned only 60% of his pay.  Donald also refuted Tonya's allegations that she had paid all the bills, noting that she had only proved that she paid one mortgage payment, and she had

been late and uncooperative with discovery. Donald asked for attorney fees based on his motion for contempt, motion to compel, and motion to modify. He also asserted that he had already divided some of his assets with Tonya while the divorce proceedings were pending. Donald asked the Court to find that Tonya lacked credibility with respect to any alleged loss of income due to her own misconduct.

{¶ 37} Donald also raised questions about Tonya's drinking, her selling furniture from the house and "nagging him to sell the house," notwithstanding the TMRO, and her failing to pay the mortgage. Donald pointed out that he had admitted to "being unfaithful" and to causing some damage to the house, partly due to frustration and partly because the parties had locked themselves out. He asked the court to find that his testimony was credible, and he opposed paying any further moneys to Tonya. He also pointed out that the minor child was 17 years old, so any issues related to income taxes would soon be moot.

{¶ 38} The court asked Donald's attorney to clarify whether he was asserting that there were no proceeds left in Donald's pension, and counsel responded by pointing to testimony that the parties "had taken so many loans against it during the marriage." He acknowledged that Tonya seemed to believe "there was something else left," but counsel thought she was referring to deferred compensation. Donald's attorney stated there was no evidence of how much money was in deferred compensation. Donald also pointed out, through his attorney and the parties' tax returns, that Tonya had been able to "make plenty of money" from fostering children, and that she "was able to, in fact, [earn] more than he did as a security guard for the State of Ohio."

{¶ 39} An additional exchange about Donald's pension occurred, as follows:

[COUNSEL FOR TONYA]: Your Honor, to answer your question, there was a pension.

THE COURT:   There was a pension?

[COUNSEL FOR TONYA]:   Yes, sir.

THE COURT:   And your contention, [Counsel for Donald], is there wasn't sufficient evidence to identify what was in it?

[COUNSEL FOR DONALD]: Right.   Right.

THE COURT:   Okay.   All right.   I'll look it over. I'll provide you all with a written decision as quickly as I can. * * *

{¶ 40} The trial court filed its Decision and Final Judgment Entry on June 18, 2020. The court indicated that it had reviewed all of the prior pleadings and orders in the case, the transcript of the proceedings before the magistrate on October 7, 2019, and the arguments made by counsel.

{¶ 41} The trial court overruled all of Tonya's objections.   With respect to Tonya's objection to not receiving spousal support, the court determined that Tonya had not "articulate[d] within any degree of specificity" how the magistrate erred in not awarding her spousal support, other than stating that the parties had been married for 26 years (which the court found not to be accurate).   With respect to not receiving a portion of Donald's retirement benefits, the court also found that Tonya did not "sufficiently particularize" how the magistrate allegedly erred in failing to award her any portion of Donald's retirement.   The court noted that at the October 7, 2019 hearing, Tonya acknowledged that Donald "liquidated his deferred compensation account" and the parties divided it, with each one receiving approximately $5,500.   The court found that it

was not provided with sufficient evidence that additional retirement benefits existed "with anything other than nominal equity."

**{¶ 42}** Regarding Tonya's objection that she "received no help" from Donald in paying the marital bills, the court again found that she had not sufficiently articulated how the magistrate had allegedly erred relative to the issue of marital bills and had not proposed a remedy, even if the non-payment were proven to be accurate. With respect to the magistrate's not ordering Donald to provide Tonya with health insurance, the court found that her argument lacked the specificity required by Civ.R. 53 and that Tonya failed to set forth what relief she requested, even if her claim were true. Finally, regarding Tonya's objection that Donald was not ordered to maintain health insurance on the parties' minor child, the court found that that Donald was, in fact, obligated to secure and maintain health insurance for the child, providing it was available at reasonable cost.

**{¶ 43}** The trial court also overruled all of Donald's objections. Regarding Donald's objection to the magistrate's failure to exhibits at the end of the evidentiary hearing, which led to Donald's motion to file the exhibits under seal, the court concluded:

> Upon conducting a de novo review of the transcript of the proceedings which took place before the magistrate on October 7, 2019, this Court finds that the hearing itself did not end abruptly, as insinuated by [Donald]. * * * [C]ounsel for both parties had more than ample opportunity to seek the admission of their respective exhibits before the conclusion of the hearing on October 7, 2019. Neither attorney sought the admission of their respective exhibits at that time.
>
> Two days after the conclusion of the hearing on October 7, 2019,

counsel for Mr. Johnson filed a Motion to admit certain exhibits on his behalf. * * *

* * *

This Court has witnessed on many occasions situations wherein attorneys have marked exhibits during the course of a hearing and yet not sought to admit them into evidence. In the case at hand, once the evidentiary hearing concluded, both parties were precluded from seeking to admit exhibits which were not otherwise admitted during the course of the hearing herein. * * *

Thus, the trial court overruled Donald's objection with respect to the admission of exhibits.

{¶ 44} Regarding Donald's objection that the magistrate had not designated which party could claim the minor child for tax purposes in which year, the court found that it had not been provided with sufficient evidence "to establish any net tax savings of the parties concerning utilizing the child for tax purposes," evidence relative to the financial circumstances and needs of the parents related to the tax issue, or evidence concerning the eligibility of either or both of the parties for federal earned income tax credits or other state or federal tax credits. The court concluded that R.C. 3119.82 required it to consider the foregoing factors before addressing the tax issue, and because the parties had not provided the magistrate with sufficient evidence related to the tax issue, Donald's objection was overruled.

{¶ 45} Regarding the magistrate's failure to find that Donald's income had been substantially reduced during the divorce proceedings, the court noted that Donald had testified that his income was reduced to approximately 70% of its normal amount for a

four-month period, but that he did not provide sufficient corroborating evidence. Moreover, the court found that, even if Donald's testimony that he experienced a 30% reduction in his income for four months was accurate, he had also worked overtime throughout the course of the year. Thus, the court concluded that the magistrate's calculation of Donald's gross annual income as $57,979.67 was consistent with the evidence presented, and the objection was without merit.

{¶ 46} Finally, the court ordered that each of the parties pay their own attorney fees and ordered all court costs to be paid by Donald.

{¶ 47} Tonya appeals form the trial court's judgment, raising three assignments of error. Her first assignment of error states:

THE COURT ERRED IN FAILING TO AWARD TONYA JOHNSON

[A] PORTION OF DONALD JOHNSON'S OPERS RETIREMENT

BENEFIT.

{¶ 48} Tonya s that the trial court erred in failing to address Donald's Ohio Public Employees Retirement System (OPERS) account and in failing to award her a marital portion of the OPERS retirement account. Tonya contends that her "objection to receiving no portion of a marital asset, especially such a significant asset as a retirement benefit," was sufficiently specific to identify the error of which she complained. She also argues that the court's finding that there was no evidence of additional retirement benefits other than the deferred compensation account was "simply incorrect" and overlooked evidence concerning Donald's additional retirement benefits. Tonya asserts that, while "no exhibits were admitted at trial specifically identifying the additional retirement account," there was clearly evidence in the record that Donald had another retirement

account, specifically an OPERS account through the State of Ohio, because that account was identified in his property affidavit.

{¶ 49} Tonya argues that Donald's participation in OPERS was "a statutorily conferred asset" and that he was "mandated to participate in OPERS as an employee of the State of Ohio, Department of Rehabilitation and Correction."   She argues that, as such, the court should have ordered the parties submit additional evidence about the account pursuant to Civ.R. 53(D)(4)(d).   Tonya asserts that, when "specific evidence is absent, due to the vague testimony of the parties, there is insufficient evidence to support a trial court's division of property.   Such property division must be reversed as an abuse of discretion."

{¶ 50} Tonya argues that, even if the court's "generalized order" on page 9 of it judgment -- which awarded each of the parties his or her own retirement accounts -- were construed as a disposition of the OPERS retirement, such a disposition would be inconsistent with pages 3 and 4 of its judgment, which failed to recognize the existence of that asset.   Therefore, Tonya asserts that this case must be remanded for additional evidence concerning the pension.

{¶ 51} Finally, Tonya asserts that even if her objection "lacked adequate specificity," the court committed plain error in failing to divide a significant marital asset to which both parties referred at trial and in deviating from its responsibility to divide all marital property equitably.

{¶ 52} Donald responds that it was not an abuse of discretion for the trial court to not address or divide the OPERS retirement benefit.   In reply, Tonya argues that Donald's argument underscores the trial court's error, because he admits "no less than

five times in his brief" that such a retirement account existed.

{¶ 53} As noted above, the court ordered that each of the parties would be "awarded as their own, free and clear of any claims or interests of the other, all * * * retirement accounts * * *."

{¶ 54} As this Court has noted:

A trial court has broad discretion regarding the division of marital property, and its judgment will not be disturbed absent an abuse of that discretion. *Mathews v. Mathews*, 2d Dist. Clark No. 2012-CA-79, 2013-Ohio-2471, ¶ 8, citing *Bisker v. Bisker*, 69 Ohio St.3d 608, 609, 635 N.E.2d 308 (1994). A trial court abuses its discretion when the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

* * *

The classification of property as marital or separate must be supported by competent, credible evidence. *Mays v. Mays*, 2d Dist. Miami No. 2000-CA-54, 2001 WL 1219345, *3. The factors set forth in R.C. 3105.171(A) determine the marital or separate classification of property.

*Jones v. Jones*, 2019-Ohio-2355, 138 N.E.3d 634, ¶ 16, 18 (2d Dist.).

**{¶ 55}** Marital property includes all "real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i).

**{¶ 56}** As noted by the Supreme Court of Ohio:

The rights and obligations associated with pension and retirement funds are contractual in nature. Pension and retirement plans are diverse since they may (1) be derived from public or private employment; (2) be vested or nonvested; (3) consist of contributions from employee only, employer only, both or neither; (4) include contingencies for payment; (5) and be subject to garnishment and execution. In some instances, the parties' pension and retirement funds may be the most significant marital asset of one or both spouses. Thus the trial court must understand the intricacies and terms of any given plan and, if necessary, require both of the parties to submit evidence on the matter in order to make an informed decision. See *Willis v. Willis* (1984), 19 Ohio App.3d 45, 48, 19 OBR 112, 115, 482 N.E.2d 1274, 1277.

*Hoyt v. Hoyt*, 53 Ohio St.3d 177, 180-181, 559 N.E.2d 1292 (1990).

**{¶ 57}** In *Bisker*, the Ohio Supreme Court noted that "a vested pension plan accumulated during marriage is a marital asset that must be considered in arriving at an equitable division of property." *Bisker* at 609, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 541 N.E.2d 597 (1989). It is undisputed that Donald participated in OPERS during

the course of his marriage as a full-time State of Ohio employee. He testified that he had been employed at the Madison Correctional Institution for approximately 23 years, a substantial period of time. Donald also acknowledged that Tonya was entitled to half of his retirement benefits. The fact that Donald requested an offset against his retirement account based upon Tonya's retention of half of his deferred compensation did not excuse or justify the trial court's failure to properly divide his OPERS retirement account. While counsel for Donald represented to the court that the parties "had taken so many loans against" the retirement benefits, no such testimony was presented, and no evidence of the value of the retirement benefits, which were potentially a major marital asset, was presented. Furthermore, the future payment of OPERS benefits is statutorily predictable. Thus, we conclude that the court abused its discretion in failing to value Donald's retirement benefits, and in doing so, in effectively treating them as Donald's separate property.

{¶ 58} Tonya's first assignment of error is sustained.

{¶ 59} Tonya's second assignment of error is:

THE TRIAL COURT ERRED IN THE MANNER IN WHICH IT ALLOCATED THE MARITAL DEBTS.

{¶ 60} Tonya asserts that the court "restated, verbatim, the magistrate's Orders concerning the bills and debts," and therefore "failed to comply with the requirements of this Appellate Court for a final appealable order," which constitutes error. She directs our attention to *Bennett v. Bennett,* 2012-Ohio-501, 969 N.E.2d 344 (2d Dist.)*.* Tonya argues that a "court order must be adequately specific for the parties to know what their rights and duties are without reference to other things." Tonya argues that the court's

order that Donald be responsible "for all outstanding bills associated with the prior marital residence" is vague and nonspecific. According to Tonya, it was impossible for the parties to determine their rights and obligations "without reference to some other instrument," and there was no instrument that identified the rights and obligations, "other than the transcript." Tonya asserts that there was ample evidence in the record for the court to issue a proper order specifying Donald's obligations, based on her own undisputed testimony enumerating the outstanding debts and costs. She argues that the court's order was vague as to what bills it considered to be outstanding and as to whom Donald was supposed to pay, and that the court must be required to issue a more specific order.

{¶ 61} Donald responds that the trial court's order that he pay outstanding debts for the marital residence was sufficiently specific and that, even if there were error in this regard, Tonya either invited the error by refusing to cooperate during the divorce proceedings or waived it "for want of specificity and particularity under Civ.R. 53."

{¶ 62} In *Waxman v. Link*, 2d Dist. Montgomery No. 28415, 2020-Ohio-47, this Court discussed *Bennett* and final orders as follows:

Under Ohio Constitution, Article IV, Section 3(B)(2), we have appellate jurisdiction only over final and appealable orders. "When a trial court refers a matter to a magistrate for a decision, the magistrate's decision is not a final appealable order. * * * The trial court's resolution of a referred matter, upon review of the magistrate's decision, must satisfy several requirements to be considered a final appealable order." *Keeney v. Keeney*, 2d Dist. Clark No. 19-CA-0037, 2019-Ohio-4098, ¶ 3. "First, the

trial court's judgment entry must contain the trial court's own judgment and order on the underlying matter; it is insufficient for the trial court to simply adopt the magistrate's decision as its own order." *Id.* at ¶ 4, citing *State ex rel. Boddie v. Franklin Cty. 911 Admr.,* 135 Ohio St.3d 248, 2013-Ohio-401, 985 N.E.2d 1263, ¶ 2, *Harkai v. Scherba Industries, Inc.*, 136 Ohio App.3d 211, 218, 736 N.E.2d 101 (9th Dist.2000), and Civ.R. 53(D)(4)(e).

In addition, "[t]he trial court's entry must sufficiently address the pending issues 'so that the parties may know of their rights and obligations by referring only to that document known as the judgment entry,' " the court must rule on pending objections if they have been made, and "the judgment entry must 'be a document separate from the magistrate's decision.' " [*Keeney*] at ¶ 7, quoting *Kendall v. Kendall*, 6th Dist. Ottawa No. OT-13-019, 2014-Ohio-4730, ¶ 15. (Other citations omitted.) *See also Bennett v. Bennett*, 2012-Ohio-501, 969 N.E.2d 344, ¶ 20 (" 'Civil Rule 54(A) provides that "[a] judgment entry shall not contain a recital of pleadings, the magistrate's decision in a referred matter, or the record of prior proceedings." A trial court must render its own separate judgment and may not simply state that it approves, adopts, or incorporates a magistrate's decision.' ").

With respect to the requirement of separate documents for a magistrate's decision and a judgment entry, both [*Keeney*] and *Bennett* relied on the provision in Civ.R. 54(A) that " '[a] judgment shall not contain * * * the magistrate's decision in a referred matter.' " [*Keeney*] at ¶ 7;

*Bennett* at ¶ 20. However, Civ.R. 54(A) was amended, effective July 1, 2019, to eliminate that language. After the amendment, the rule states only that " 'Judgment' as used in these rules means a written entry ordering or declining to order a form of relief, signed by a judge, and journalized on the docket of the court."

*Waxman* at ¶ 20-22.

{¶ 63} As noted above, the court ordered Donald to "be responsible for all outstanding bills associated with the prior marital residence." We agree with Tonya that the trial court failed to address the issue of "all outstanding bills" with particularity so that the parties would know of their rights and responsibilities. We further agree that the order lacked clarity and was vague as to what exactly Donald was required to pay. The temporary orders required Donald to make the house payment and pay for the utilities each month. Tonya enumerated multiple bills and costs that she indicated had been Donald's responsibility, but it is unclear from the court's order which, if any, of these he was required to pay.

{¶ 64} Tonya's second assignment of error is sustained.

{¶ 65} Tonya's third assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO AWARD TONYA JOHNSON ANY SPOUSAL SUPPORT.

{¶ 66} Tonya asserts that her objection to the magistrate's decision on the issue of spousal support "was adequately specific" and that the trial court acted arbitrarily and unreasonably in failing to award spousal support under the facts of this case.

{¶ 67} As this Court has noted:

* * * "A trial court has broad discretion in establishing and modifying a spousal support award." *Dingess v. Smith*, Washington App. No. 09-CA-18, 2010-Ohio-343, citing *Cassidy v. Cassidy*, Pike App. No. 03CA721, 2005-Ohio-3199, at ¶ 27. "Thus, we will not reverse a spousal support award absent an abuse of discretion." *Id.* In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider fourteen factors expressed in R.C. 3105.18(C)(1)(a)-(n), which governs awards of spousal support. "In allocating property between the parties to a divorce and in making an award of [spousal support], the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law."

(Citations omitted.) *Burke v. Burke,* 2d Dist. Champaign No. 2011-CA-2, 2011-Ohio-3723, ¶ 24.

{¶ 68} R.C. 3105.171(C)(3) provides: "The court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under [R.C. 3105.18] and without regard to any spousal support so awarded." R.C. 3105.18 provides in relevant part:

(A) As used in this section, "spousal support" means any payment or payments to be made to a spouse or former spouse, * * * for the benefit of a spouse or a former spouse, that is both for sustenance and for support of the spouse or former spouse. * * *

(B) In divorce and legal separation proceedings, upon the request of either party and *after* the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. * * *

* * *

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

* * *

(d) The retirement benefits of the parties[.]

(Emphasis added.)

{¶ 69} Consistent with our disposition of the first assignment of error, we conclude that, because the trial court abused its discretion in failing to address Donald's retirement account, the court further abused its discretion in deciding the issue of spousal support without considering Donald's retirement benefits and how they would be distributed between the parties.

{¶ 70} Tonya's third assignment of error is sustained.

{¶ 71} Having sustained Tonya's assignments of error, the judgment of the trial court is reversed. The matter is remanded for the trial court to address Donald's OPERS retirement account in its division of the parties' marital property, to address Tonya's request for spousal support after dividing all of the marital assets, and to clarify its order regarding Donald's responsibility for "all outstanding bills associated with the prior marital

residence."

. . . . . . . . . . . . .

HALL, J., concurs.

TUCKER, P.J., concurs:

{¶ 72} Though I concur in the majority opinion, I write separately to note that our reversal of the spousal support decision is not an indication concerning the merits of this issue. The reversal is premised upon the R.C. 3105.171(C)(3) requirement that the trial court make an equitable division of the parties' property "prior * * * and without regard to any spousal support * * * award[ ]." Since there must be a reexamination of the OPERS retirement account, a separate, distinct reexamination of the spousal support issue is also required. Consistent with Civ.R. 53(D)(4)(d), the fresh look requires the trial court upon remand to "undertake an independent review [of the spousal support issue] to ascertain that the magistrate has properly determined the factual issues and appropriately followed the law."

Copies sent to:

Valerie Juergens Wilt
Regina Rosemary Richards
Hon. Thomas J. Capper